No. 3339

Second Circuit

———

ADAMS v. BELL MOTORS, INC.

———

(December 19, 1928. Opinion and Decree.)

———

Matthew C. Redmond, of Monroe, attorney for plaintiff, appellee.

McHenry, Montgomery, Lamkin & Lester, of Monroe, attorneys for defendant, appellant.

ODOM, J. This is a damage suit growing out of a collision between plaintiff's automobile, which he was driving, and 'a Chrysler car, driven by one Tripp, who is alleged to have been an employee of the defendant company.

After alleging that the collision was due to the fault and negligence of the said Tripp, plaintiff, in order to hold defendant company liable for the resulting damage, alleged that the car which collided with his was "a third party's car, but was in the hands of the Bell Motors, Incorporated, for repairs and under their control, and that said E. L. Tripp was at the time an employee of this company and was in the scope of his employment; that he had just repaired the car and was testing it out, and, on account of the excessive rate of speed, was entirely to blame for the accident."

We may as well state here that the testimony shows, and in fact it seems to be conceded by defendant, that the collision was due to the fault and negligence of the driver, Tripp, and that plaintiff was guilty of no fault. Therefore, plaintiff should recover of defendant whatever damage and loss he sustained, provided that defendant be responsible for such damage.

On the trial of the case, plaintiff offered no testimony in support of his allegation that the car which collided with his was in custody of defendant for repairs and under its control, and that the driver, Tripp, was in its employ and was acting within the scope of his employment when the collision occurred.

The defendant having specifically denied these allegations contends that plaintiff can not recover from it as it was incumbent upon plaintiff to make proof of those facts. In Article IV of his petition, plaintiff specifically alleged that the car which collided with his was under the control of defendant and was being operated by Tripp, one of its employees, who was acting within the scope of his employment. Defendant, in Artivle IV of its answer, said: "Respondent denies the allegations contained in Article IV of plaintiff's petition."

If defendant had done no more than deny this allegation, along with the others, it would have been incumbent upon plaintiff to make proof that the car which collided with his and caused the damage which he sustained, was under defendant's control, in order to connect it with the case. But defendant went further in its answer and set up the special defense that the collision was due, not to the fault of Tripp, but to the fault and negligence of plaintiff himself.

Plaintiff's petition is written in six paragraphs. Defendant denied, article by article, all these allegations. Then follow four additional paragraphs, as follows:

"(7) Further answering, your respondent shows that the Dixie-Overland Highway, a State Highway, in entering the City of Monroe, Louisiana, runs in an Easterly and Westerly direction, and that the said Highway where the accident occurred is frequently traveled by automobilists, and particularly at the time of day that plaintiff alleges that the accident occurred, and that Bell Avenue intersects said Dixie-Overland

Highway at right angles about a mile from the City Limits of the City of Monroe, Louisiana, and that on the west side of said Bell Avenue where it intersets the said Dixie-Overland Highway, is a one-story frame residence, and in front of said residence is a wooden bridge, which is of sufficient size to hold an automobile and which said bridge is frequently used by the owner of the said residence for parking his said automobile.

"(8) Petitioner further shows that at the time of the accident there was an automobile parked on the bridge in front of the residence on the West side of Bell Avenue, and on the South side of the said Dixie-Overland Highway, and which said automobile parked in such a position would prevent one entering the Dixie-Overland Highway from Bell Avenue from seeing approaching automobile traffic proceeding in an Easterly direction on the Dixie-Overland Highway.

"(9) Petitioner further shows that plaintiff's view of traffic approaching from the West on the Dixie-Overland Highway was obstructed on account of the curtains being up on his Chevrolet touring car, and on account of an automobile parked in front of a residence on the South side of the Dixie-Overland Highway, and that said accident was due to the plaintiff driving on to the Dixie-Overland Highway from Bell Avenue without exercising reasonable care in looking for approaching automobiles from the West, and in not delaying his entrance on the said Dixie-Overland Highway until the approaching automobile driven by Tripp had passed Bell Avenue, the danger point.

"(10) Respondent becoming plaintiff in reconvention, shows that on account of the said accident, which was due to the carelessness and negligence of said plaintiff with his said automobile in entering said Dixie-Overland Highway, it has been damaged in the sum of ONE HUNDRED SIXTY-FIVE AND 75/100 ($165.75) DOLLARS, being the amount expended by it for repairs to the automobile struck by plaintiff, and that it was necessary to make repairs on said automobile in order to place it in the same condition that it was prior to the accident."

We understand counsel's contention to be that if Articles VII, VIII and IX are construed as parts of the answer, plaintiff was relieved of the necessity of making proof of his allegations that defendant was, through its employee, Tripp, in control of the Chrysler car and responsible for the damage. But counsel say that those Articles are not part of the answer, but are allegations in support of its reconventional demand, and that a reconventional demand is no part of the answer. In support of their contention that a reconventional demand, although filed at the same time with the answer and in the same paper, is not a part of the answer, counsel cite the cases of Powell vs. Graves, 14 La. Ann. 860, and Stringfellow vs. Nowlin Bros., 157 La. 683, 102 So. 869. But paragraphs VII, VIII and IX speak for themselves and show that they were inserted as a continuation of the answer in which a special defense was set up.

Paragraph VII begins, "Further answering, your respondent shows," and then follow the allegations that at the point where Bell Avenue intersects the Dixie-Overland Highway there is a residence, and in front of it a bridge on which the owner of the residence frequently parked his car; and in paragraph VIII, that at the time of the accident, there was an automobile parked on the bridge; and, in paragraph IX, that plaintiff's view of traffic on the Dixie-Overland Highway was obstructed by the car parked on the bridge, "and that said accident was due to plaintiff driving on to the Dixie-Overland Highway from Bell Avenue without exercising reasonable care in looking for approaching automobiles

from the West and in not delaying his entrance on the said Dixie-Overland Highway until the approaching automobile, driven by Tripp, had passed Bell Avenue, the danger point."

The allegations in these three paragraphs are details, all related, and, taken together, constitute the defense to the suit and are not inserted after defendant had assumed the position of plaintiff in reconvention, but are contained in and follow paragraph VII which opens with the words: "Further answering, your respondent shows." These allegations were not made by defendant as plaintiff in reconvention, but as "respondent," in answer to the demands brought against it.

As we view it, these allegations were inserted primarily as a basis for the introduction of testimony to defeat plaintiff's demands. They were made the basis of the reconventional demand, it is true, but they were nevertheless a part of the answer.

If defendant had merely denied the allegations of plaintiff's petition and then assumed the position of plaintiff in reconvention and set up the matters contained in paragraphs VII, VIII and IX, it would be clear that these articles would be no part of the answer. But, defendant did not assume the character of plaintiff in reconvention in those articles, but only in article X wherein it is alleged that "on account of said accident, which was due to the carelessness and negligence of plaintiff * * * it has been damaged," etc.

The setting up of the special defense in the answer was, in effect, an admission by defendant that the automobile was in its possession and control, and that Tripp was acting within the scope of his authority, and it was therefore unnecessary for plaintiff to make proof of those facts.

Besides, we find that two days before the answer was filed, defendant tendered an exception of no cause of action. By its tender of that exception, it admitted the well-pleaded facts, but not, of course, the conclusions of law contained in the petition. (See La. Digest, Vol. 6, page 31, Sec. 62; Hennen's Digest, page 1169.)

The lower court rendered judgment in favor of plaintiff for $750.00. Defendant says this amount is excessive. Plaintiff's Chevrolet car was totally destroyed. He paid $650.00 for it about fourteen (14) months before the collision and used it constantly up to the date on which it was destroyed. The only testimony in the record as to its value at the time it was destroyed is that of Mr. Rogers, a Chevrolet dealer, who says it had a "trade-in" value of about $250.00. But plaintiff alleged and swore that on account of the destruction of his car, he was driven to the necessity of hiring another car, in order to carry on his business, at a cost of $10.00 per day, and he asks reimbursement for this outlay. But, that is not an element of damage in a case like this. Plaintiff's car was totally destroyed, or so nearly so that it could not be repaired, and he sued for the value thereof. One who recovers the full value of a chattel destroyed through the negligence of another, can not recover for the value of the use thereof after same was destroyed. The measure of damage in such cases is the value of the property destroyed. In Blashfield's Cyclopædia of Automobile Law, Vol. 2, page 2004, the rule is stated thus:

"Where an automobile is practically destroyed, or so nearly destroyed as not to be susceptible of repair, the measure of damages is its reasonable market value immediately before the accident." Citing Langham vs. C. R. I. & P. Railroad Co., 897, 208 N. W. 356; Anderson vs. U. S. Railroad Administration, 193 Iowa 1041,

188 N. W. 826; Cincinnati N. O. & T. P. Ry. Co. vs. Sweeney, 166 Ky. 360, 179 S. W. 214.

See also Marland Ref. Company vs. Duffy, 940 Okl. 16, 220 Pac. 846, 35 A. L. R. 52, 8 R. C. L. 486, 487, Sections 47 and 48.

. If, on the other hand, an automobile is only partially destroyed, and can be repaired, the loss of the use thereof during the time the repairs are being made is an element of damage.

Blashfield's Cyclopædia, Vol. 2, page 2004; Marland Ref. Co. vs. Duffy, 94 Okl. 16, 220 Pac. 846, 35 A. L. R. 52; see note in 32 A. L. R. 706 and 4 A. L. R. 1350; 2 R. C. L., supplement 619, note 13.

We find it stated in counsel's brief that the lower court allowed plaintiff $340.00, to reimburse him for the amount paid for the use of another car until he purchased one. If so, the Court erred in that respect. The judgment itself is silent as to the items going to make up the total of $750.00, which the court allowed. Our conclusion is that plaintiff is entitled to recover $250.00 for the loss of his car, and $250.00 for personal injuries. He was knocked out of his car through the windshield; was cut on the head by glass; his leg was cut; his hip bruised; his chest was sore; his arm rendered stiff; and he was shocked and stunned; and, while he was able to go on with his work, and incurred no medical expense, he is entitled to nominal damages for said injuries, and the lower court no doubt took them into consideration in fixing the amount awarded.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be amended, so as to reduce the amount of the award from $750.00 to $500.00; and, as thus amended, it is affirmed; appellee to pay cost of appeal, and other costs to be paid by appellant.