## BURRAGE v. TRI–STATE TRANSIT CO. OF LOUISIANA, Inc., et al.

### No. 4566.

Court of Appeal of Louisiana. Second Circuit.

June 30, 1933.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellants.

Barnette & Barnette, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff sues to recover $950, the amount of damages alleged to have been done to his truck, trailer, and winch, by defendant's bus, negligently and carelessly driven by its operator on the Greenwood road, seven miles west of the city of Shreveport, the morning of March 15, 1932. He also sues to recover $100 for the loss of profits to him on account of being deprived of the use of his said property for ten days. Other amounts were sued for, but demands for these were dismissed or abandoned.

Defendant denies negligence and liability on its part for the injury to plaintiff's property, and pleads contributory negligence in bar of his right to recover, if it should be found and held that defendant was negligent to any extent.

At the instance of defendant, the case was tried before a jury, which returned a verdict of $800 for plaintiff. After unsuccessful effort to secure new trial or rehearing, defendant appealed from the judgment of the court rendered pursuant to the jury's verdict.

Counsel of defendant in argument and brief concedes liability of defendant for the accident from which this litigation arose. This leaves only the amount of damages to be considered and fixed by us.

Plaintiff purchased the truck, trailer, and winch on August 4, 1931, for $1,084. The invoice totals $1,187, but this includes $103 intended to cover interest, insurance, and other carrying charges, which cannot be properly treated as part of the purchase price. The chassis of the truck (1½ ton Chevrolet) cost $619; the winch cost $290; and the trailer cost $175. When injured, the speedometer of the truck indicated that it had been run 14,575 miles. The evidence otherwise establishes this to be the correct mileage the truck had been driven. It was new when purchased.

When the collision between the truck and bus happened, the former was loaded with oil field pipe, en route to Longview, Tex. It is not disputed that the truck itself was a total wreck and not worth repairing. One witness valued it after the collision at $50, while another did not think it worth over $20. It would have cost more to have repaired it than a new one could have been bought for. The trailer suffered slight damage from the impact with the bus; its coupling pole only being bent. It is shown this could be repaired for $7.50. The winch was more seriously injured. The cost of restoring it to good condition is shown to be $50. Therefore we may eliminate the damage to trailer and winch from further consideration by fixing the amount thereof at $57.50.

After plaintiff purchased the truck, he had it reinforced at an expense of $25, a windshield installed, costing $10, purchased 100 feet of heavy chain for use in hauling oil field pipe, machinery, etc., which cost him $25.28, and also purchased load binders to the amount of $11.25. The total cost of these additional attachments and accessories was $71.53, which brought the cost of the truck itself to $690.53.

It is shown that a truck of this character, if prudently operated and looked after, may be depended on to cover fifty or sixty thousand miles. Many have functioned satisfactorily for over one hundred thousand miles. The life of one depends entirely upon the driver, the nature of the roads driven on, the weight of loads, and the care and attention given the truck while being operated. This truck was used exclusively in hauling heavy loads from one oil field to another, with burdens (on it and the trailer) equaling three tons. Under such service it is improbable that it would operate satisfactorily over fifty or sixty thousand miles. When wrecked, it

had covered approximately one-fourth of the mileage it could reasonably be expected to negotiate while serviceable.

Plaintiff and his witnesses valued the truck, trailer, winch, and attachments at from $800 to $1,000. As we have separated the damage to the truck from that inflicted on the winch and the trailer, which could be easily detached from the truck, these estimates do not assist us much in determining the measure of damages to the truck. However, one witness for plaintiff did say the truck chassis, when injured, was worth $500. Defendant's witnesses, neither of whom knew the truck and trailer before they were injured, appraise the entire outfit as being not worth more than $300. This evidence, on its face, certainly cannot be accepted as a safe criterion to fix the value of plaintiff's truck, trailer, and accessories when wrecked by defendant's bus. It is shown that the truck then was in good condition, that it had been carefully inspected from time to time and the depreciation absorbed by plaintiff as far as possible by proper repairs and additions. Without positive testimony establishing the fact, we are unwilling to hold that a truck of the character of plaintiff's, in good condition after having traveled only about 15,000 miles, is worth but $200, as defendant's witnesses would have us believe.

In view of the conflicting evidence in this case, touching the value of the truck when injured, we think the safest basis on which to rest judgment lies in an application of the law of proportion and average. Practically three-fourths of the life and usefulness of the truck was before it. Depreciation from ordinary wear and tear was approximately 25 per cent. As the truck, with additions, cost plaintiff $690.53, it was worth approximately $500 when destroyed. Adding the damages done to the trailer and winch to this amount brings the total to $557.50, which, all things considered, we believe will fairly and equitably cover the loss plaintiff sustained from the collision. This amount is offset by the value of the wrecked truck, which we fix at $30.

Plaintiff is not entitled to recover any amount on account of being deprived of the use of the truck, etc., for ten days following the collision. It is well settled that the measure of damages for the destruction of an automobile or truck is the value of the vehicle at time of destruction. This was squarely held by us in Adams v. Bell Motors, Inc., 9 La. App. 441, 121 So. 345, 347. In that case we said: "Plaintiff's car was totally destroyed, or so nearly so that it could not be repaired, and he sued for the value thereof. One who recovers the full value of a chattel destroyed through the negligence of another, cannot recover for the value of the use thereof after same was destroyed. The measure of damage in such cases is the value of the property destroyed."

Many authorities are cited in this opinion to sustain the principles enunciated.

Blashfield's Cyclopedia of Automobile Law, vol. 2, p. 2004, states the rule to be: "Where an automobile is practically destroyed, or so nearly destroyed as not to be susceptible of repair, the measure of damages is its reasonable market value immediately before the accident."

For the reasons assigned, the judgment of the lower court is amended by reducing the amount thereof to $527.50, and, as thus amended, said judgment is affirmed; all costs to be paid by defendant.